# Ann Ball

**Attorney At Law**
**357 Veterans Memorial Highway**
**Commack, New York 11725**
**(631) 864-8700**

October 4, 2012

<u>Via ECF</u>
Hon. Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Ball v. St. John's University, et al. 12-CV-04821 (BMC)
    Plaintiff's response to defendants' pre-motion conference letter

Dear Honorable Sir:

Mr. Zuckerman's letter contains material misstatements of fact:

1. There was no '*full and fair hearing*'. Defendant McElroy, an attorney, presided over the hearing. James (a sophomore, age 19) was not allowed the presence or assistance of counsel. James was asked to affirm the truth of his testimony and was advised by Ms. McElroy if he "<u>*provided false information it would result in judicial action*</u>" and "<u>*questioning must pertain to the incident*</u>." Defendant Flynn produced an unsigned, unsworn email he alleged was written by defendant Miller (age 20); no witnesses testified. James objected to the introduction of the writing and moved to dismiss the charges on the ground the statement was unsworn. Ms. McElroy denied his motion, stating, "<u>*it was not a court of law,*</u>" "<u>*the rules of evidence are not in play*</u>" and "<u>*the purpose of the hearing was to determine who was more credible*</u>." The Student Conduct Process & Code of Conduct states the burden of proof is on St. John's to a preponderance of the evidence. The writing contained erroneous dates, a fact pointed out to Ms. McElroy by a member of the panel. James affirmed the truth of his testimony, stated he was not in violation of the Rules, that the sexual contact with Ms. Miller was consensual and that she filed a complaint after he ended their relationship. James answered all questions yet had no opportunity to question Ms. Miller. Ms. McElroy allowed questions of James that served no legitimate purpose and did not pertain to the incident, including: what James believed Ms. Miller's motivation was for filing charges, whether he thought the complaint stemmed from guilt or pressure from her parents and why he ended the relationship. These questions were clearly designed to portray James in an unfavorable light; the students on the panel were all female.

2. James was not only '*suspended for one semester*'. On April 30th

James was suspended. On May 1st James and I, as his attorney, met with defendants Trujillo and Flynn. James maintained his innocence. St. John's refused to let him take his final exams. On July 18th, the conduct board found him in violation of 'misconduct'. Mr. Trujillo continued James' suspension until the spring 2013 semester, when he is eligible to return with severe restrictions. The practical effect of this was the imposition of, in the least, a full year suspension since James was not permitted to complete his finals for course work already completed when the suspension was imposed. He cannot register for the next level of courses because the spring 2012 courses are prerequisites. It seems defendants would have James repeat courses completed and paid for in the spring 2012 semester.

On the remaining issues:
1. Part of the claim is subject to CPLR Article 78 adjudication: Suit was commenced before the administrative process was exhausted. The Article 78 proceeding was commenced in Queens County Supreme Court on September 27, 2012 upon denial of the appeal.
2. Defective pleadings: It is unclear whether the Court was provided with a copy of the complaint. The matter was venued in Queens County Supreme Court and drafted in accordance with state court practice. If removal is sustained plaintiff has the ability to amend his complaint.
3. Absence of Title IX and NYC Article 8 violations: St. John's did not protect James' rights or treat him equally at any stage of the proceeding. James' unequivocal denial of the charges was ignored and he was, without due process, subjected to a forfeiture of his semester's work and tuition. James was also subjected to unequal treatment in the application of the Code. If James was found in violation of 'misconduct' and Ms. Miller was present at the time of the alleged 'misconduct', in accordance with the Code of Conduct, she too should have been found in violation of misconduct, stripped of her grades, forfeited her tuition and suspended, but she was not. Additionally, although James stated he had been falsely accused St. John's took no action against Ms. Miller and never considered whether Ms. Miller was guilty of filing a false report.
4. The defamatory statements are protected by "common interest" and 'qualified privilege': This has no basis in law or logic.
5. The St. John's defendants are not state actors: St. John's acted under color of state law. It must adhere to the requirements of basic due process and equal protection of the law even though it is a "private" institution. It enjoys significant Federal, State and City benefits, such as through the New York Dormitory Authority, government grants, and tax exemptions. St. John's operates under a franchise from the NYS Board of Regents, and is subject to the laws, rules, and regulation of the City and State of New York and the Federal government. There is state case law authority that the City, State and Federal participation must be considered a State presence

when considering due process and equal protection for non-academic student discipline, and that students must receive equal protection of the laws. Attendance at a tax-supported university is a right subject to constitutional protection. Therefore, James M. Ball is entitled to constitutional protection. Procedures must be fair and conscionable and St. John's handling of this matter, including its unreasonable delay in rendering decisions on the hearing and appeal, fixed a significant and lasting punishment well beyond the stated suspension. James has been, and continues to be, unlawfully deprived of the opportunity and contractual right to the credit for the Spring 2012 semester and to continue as an eligible matriculating student without restriction. Its actions in suspending James based solely upon an unsigned, unsworn and unsubstantiated statement, containing obvious errors, and the product of hearsay, was clearly insufficient to sustain the charges. The entire attitude of St. John's towards James, and their conduct throughout, was, and is, prejudicial and biased against him. It is contrary to due process rights, the rule of law and the interests of justice in that there was no rational basis for its decisions. The sanction of suspension with the forfeiture of credits for the prior semester for false charges that were dismissed in a Court of law shocks the conscious and any sense of fairness and has no basis in law or logic.

6. St. John's definition of 'misconduct' as <u>any conduct</u> *'which adversely affects the student's suitability as a member of the academic community or which is inconsistent with the Mission Statement of the University'* is unconstitutionally vague as it gives no warning of what conduct is proscribed and allows St. John's to find 'misconduct' whenever or wherever as it sees fit.

              Respectfully submitted,

              *Ann Ball*

              ANN BALL

AB:cd
cc: Lyle S. Zuckerman, Esq. (via ECF)
   James Moschella, Esq. (via ECF)